Commonwealth *v.* Tunstall, Appellant.

Argued March 21, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ., (HIRT, J., absent).

*A. Leon Higginbotham, Jr.,* with him *Harvey N. Schmidt, Clifford Scott Green,* and *Schmidt, Green, Harris & Higginbotham,* for appellant.

*Victor Wright,* Assistant District Attorney, with him *Samuel Dash,* Acting District Attorney, for appellee.

OPINION BY RHODES, P. J., July 21, 1955:

This is an appeal by defendant from conviction and sentence on an indictment charging him with being engaged in or maintaining an illegal lottery. Having waived a jury trial, appellant was tried and found guilty before President Judge CHARLES KLEIN, of the Orphans' Court of Philadelphia County, specially sitting in the Court of Quarter Sessions of Philadelphia County. On appeal appellant asserts the trial judge erred in refusing his motions for new trial and in arrest of judgment.

The Commonwealth's evidence showed that police officers observed appellant seated in his car three quarters of a block from his residence at 3915 Wallace Street, Philadelphia. As the officers approached, appellant placed a slip of paper in his mouth. One of the officers put his arm around appellant's neck and used force to take the slip of paper from appellant's mouth. This slip of paper, introduced in evidence by the Commonwealth over appellant's objection, contained fourteen straight number plays. Upon entering appellant's home, the officers found a cigarette pack on the floor in the vestibule beneath the mail slot in the door. Wrapped in this pack were "six yellow banker slips with 130 straight number plays and two code writers 26 and 26-A." The officers also confiscated $7 in money found on the dining room table at appellant's home; appellant admitted to the officers that this was "numbers money."

Appellant contends that the introduction in evidence of the slip of paper containing number plays, which had been removed from his mouth by force, and the use of this evidence by the Commonwealth at the trial to support the conviction violated his constitutional right to due process of law. We are agreed that the number slip was properly admissible in evidence

although removed by force from appellant's mouth. In this Commonwealth it is settled that the admissibility of evidence is not affected by the illegality of the means by which it is obtained. *Com. v. Dugan,* 143 Pa. Superior Ct. 383, 387, 18 A. 2d 84; *Com. v. Montanero,* 173 Pa. Superior Ct. 133, 96 A. 2d 178; *Com. v. Dabbierio,* 290 Pa. 174, 138 A. 679; *Com. v. Chaitt,* 380 Pa. 532, 535, 112 A. 2d 379. Thus, in *Com. v. Statti,* 166 Pa. Superior Ct. 577, 73 A. 2d 688, it was held that extracting blood from a defendant without his consent for the purpose of making a blood test did not render the evidence inadmissible, and that it was not a violation of a defendant's constitutional privilege against self-incrimination. Admittedly in the Federal courts a different rule is recognized, and it has been held that the Fourth Amendment excludes evidence obtained by federal agents in an illegal search and seizure. *Weeks v. United States,* 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652; *Lustig v. United States,* 338 U. S. 74, 69 S. Ct. 1372, 93 L. Ed. 1819. However, the Federal rule does not apply to prosecutions in a state court for a state crime. *Wolf v. Colorado,* 338 U. S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782.

Appellant relies upon *Rochin v. California,* 342 U. S. 165, 72 S. Ct. 205, 96 L. Ed. 183, as controlling here. In the *Rochin* case police officers entered defendant's home without a warrant and forced open the door of his bedroom on the second floor where they came upon defendant sitting on the bed on which his wife was lying. The officers saw two capsules on a stand beside the bed. Defendant grabbed these and put them in his mouth. A struggle ensued; defendant was taken to a hospital, where, at an officer's direction, a doctor forced an emetic into defendant's stomach against his will. The action of the emetic produced vomiting and two capsules thus obtained

from defendant's stomach contained morphine. Although affirmed by the state courts, the United States Supreme Court set aside the conviction on the ground that the admission of evidence obtained by such methods violated defendant's right to due process of law under the Fourteenth Amendment. In the opinion of the court, written by Mr. Justice FRANKFURTER, it was stated (page 172 of 342 U. S., page 190 of 96 L. Ed.) : ". . . we are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation." It is clear from the opinion that the *Rochin* case presents an extreme situation on its facts and that, in what is necessarily a matter of gradation and degree, various factual situations might be conjured up which would not be controlled by the *Rochin* decision. Mr. Justice FRANKFURTER makes this clear when he said (page 174 of 342 U. S., page 191 of 96 L. Ed.) : "In deciding this case we do not heedlessly bring into question decisions in many States dealing with essentially different, even if related, problems. We therefore put to one side cases which have arisen in the State courts through use of modern methods and devices for discovering wrongdoers and bringing them to book. It does not fairly represent these decisions to suggest that they legalize force so brutal and so offensive to human dignity in securing evidence from a suspect as is revealed

by this record. . . . We are not unmindful that hypothetical situations can be conjured up, shading imperceptively from the circumstances of this case and by gradations producing practical differences despite seemingly logical extensions. But the Constitution is 'intended to preserve practical and substantial rights, not to maintain theories.' Davis v. Mills, 194 U. S. 451, 457, 48 L. Ed. 1067, 1071, 24 S. Ct. 692." It appears therefore that the *Rochin* decision is not controlling and does not preclude the admission in this case of the slip of paper taken from appellant's mouth with some force.

*Watts v. Indiana,* 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801, and kindred cases, such as *Malinski v. New York,* 324 U. S. 401, 65 S. Ct. 781, 89 L. Ed. 1029, and *Ashcraft v. Tennessee,* 322 U. S. 143, 64 S. Ct. 921, 88 L. Ed. 1192, cited by appellant, do not aid him. These cases stand for the well established principle that to procure convictions involuntary testimonial confessions are inadmissible in evidence under the Due Process Clause of the Fourteenth Amendment, and deal with a problem which is distinct from that here involved.

The instruments or devices of crime found upon the person of one charged with crime are legitimate evidence and may be taken from a defendant and used for that purpose. *Com. ex rel. v. Keister,* 289 Pa. 225, 229, 230, 137 A. 223. Evidence in the form of number slips taken from a defendant's pocket and hat band has been held admissible. *Com. v. Adams,* 174 Pa. Superior Ct. 504, 102 A. 2d 202. In the present case the evidence admitted was not obtained as the result of any procedure which shocks the conscience or violates appellant's fundamental constitutional rights. The conduct of the police officers was the natural reaction to appellant's attempt to destroy incriminating evi-

dence. There was nothing brutal, unreasonable, or improper in what they did to recover and preserve the evidence. There was no error in the admission of the evidence; and, with the disputed evidence admitted, there was clearly sufficient evidence to sustain the conviction. *Com. v. Oxman,* 173 Pa. Superior Ct. 482, 98 A. 2d 424.

The judgment is affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with his sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.