## Sunnybrook, Inc., v. Upper Dublin Township

*Swartz, Flynn & Roberts*, for appellant.

*Elmer L. Menges*, for Upper Dublin Township.

KNIGHT, P. J., October 20, 1950.—The board of adjustment, in its return, has made no findings of fact, so, in order to have a better understanding of the case, we find the following

### Facts

1. In 1940 Upper Dublin Township was a township of the second class: it is now a township of the first class.

2. On June 3, 1940, one David Lutz, the owner or representing the owner, presented to the then supervisors of Upper Dublin Township a plan or scheme of development of a tract of land in the North Hills section of the township, containing 74 acres.

3. This plan was recorded, and bears the following certification:

"We the undersigned supervisors of the Township of Upper Dublin, a second class township, do hereby certify that at a regular meeting held the 3rd day of

June, 1940, it was regularly moved and seconded that the Board approve the locations of streets or roads as shown on this plan dated September 1939 as prepared by C. Raymond Weir, Surveyor, Ambler, Pa., being a portion of a tract known as Oreland Garden Homes, providing that the size of lots and respective regulations shall conform with the Zoning Ordinance of the Township of Upper Dublin as amended June 30, 1939. We further certify this is a true copy of the above stated plan which was submitted and upon which the above action was taken." It was signed by the three supervisors.

4. The above plan showed certain streets and showed the tract divided into lots, most of which contained in front 65 feet, and in depth 115 feet. Some lots were slightly wider in front and some were of slightly greater depth.

5. The size of the lots as shown on the plan conformed to the requirements of the zoning ordinance then in effect in Upper Dublin Township.

6. David Lutz and those who were associated with him developed approximately two thirds of the above-mentioned tract (finding 2). Streets were laid out and constructed according to the plan, and approximately 92 houses have been built. These homes have been built on the lots shown on the plan, the great majority being 65 feet by 115 feet.

7. By deed dated January 14, 1950, the remainder of the tract of 74 acres was conveyed to Sunnybrook, Inc., by David F. Henrie, who in turn received title from North Hills Homes, Inc. All three of the above-mentioned owners are closely connected: Sunnybrook, Inc., owns all of the stock of North Hills Homes, Inc., and David F. Henrie held title for North Hills Homes, applied to the Board of Adjustment of Upper Dublin Inc.

8. Sometime prior to May 8, 1948, Sunnybrook, Inc.,

Township for a special exception, to permit it to develop and build houses on the remainder of the 74-acre tract (finding 2), in accordance with the plan approved by the supervisors on June 3, 1940 (finding 2). The special exception was refused by a decision of the board filed May 8, 1948. An appeal to this court was taken, which was dismissed July 29, 1949, for the sole reason that the appeal was not taken in time.

9. On March 11, 1947, the Commissioners of Upper Dublin Township enacted an amendment to the Upper Dublin Zoning Ordinance of 1946, by the terms of which the above-mentioned tract of land (finding 2) was placed under the classification "D" and "U" residential districts. In zone "D" the minimum lot area allowed for each lot is 20,000 square feet, and in zone "U" the minimum lot area is 10,000 square feet. The greater portion of the tract involved in this appeal is in zone "D". Appellant as well as its predecessor in title, David F. Henrie, and North Hills Homes, Inc., had actual and constructive notice of the amendment of March 11, 1947, when North Hills Homes, Inc., took title to the land here involved on December 8, 1947.

10. On September 13, 1949, David F. Henrie presented his petition to the Board of Adjustment of Upper Dublin Township, praying for a special exception to permit him to develop the remainder of the tract (finding 2), consisting of approximately 20 acres, and build houses on lots as shown on the plan approved June 3, 1940 (findings 2 and 3). This petition was filed under section 1311, of the Zoning Ordinance of Upper Dublin Township, as amended.

11. On November 3, 1949, a supplemental petition was filed by David F. Henrie, praying for a special exception or variance, to permit him to develop his land in accordance with the plan approved June 3, 1940 (findings 2 and 3). This supplemental petition was

filed under section 1007 of the Zoning Ordinance of Upper Dublin Township.

12. On September 16, 1949, the Commissioners of Upper Dublin Township enacted an amendment to the Zoning Ordinance of March 11, 1947, by the terms of which section 1311 was deleted. This amendment became effective on September 26, 1949.

13. A hearing was held before the board of adjustment, at which both of the petitions of appellant were read, and witnesses heard for and against the granting of an exception or variance. On January 11, 1950, the board filed its decision, refusing an exception and variance. This appeal followed, and a hearing was held before this court on May 31, 1950, at which testimony for and against the granting of an exception was heard.

14. The land here in question is bounded in part by land of the Lulu Temple Golf Club; and the Manufacturers Country Club, which operates a golf club, is in the immediate neighborhood. Across Little Pennsylvania Avenue is a very undesirable type of development, and the majority of the remainder of the tract abuts on the developed portion of the 74 acres.

## Discussion

In approaching a discussion of this case, we must determine what effect the repeal of section 1311 of the Zoning Ordinance of 1946 has upon these proceedings. If the repeal of section 1311 has no effect upon the petition for a special exception filed by virtue of that section on September 13, 1949, then, for the reasons expressed in our opinion in re Appeal of Sunnybrook, Inc. (No. 1), June term, 1948, filed July 29, 1949, as well as for other reasons, we are of the opinion that the board of adjustment abused its discretion in not granting the special exception.

The petition for a special exception under section 1311 was filed on September 13, 1949, and by an amend-

ment to the Zoning Ordinance of March 11, 1947, enacted on September 16, 1949, section 1311 was repealed. What effect did this repeal have upon the petition for a special exception filed on September 13, 1949? ". . . when a statute is repealed without a saving clause, it is to be considered as though it had never existed except as to transactions past and closed": Commonwealth v. Mortgage Trust Co. of Pa., 227 Pa. 163, 182 (1910). "A municipality such as a borough is but a creature of the legislature and rules applicable to the repeal of a law govern in the case of a borough ordinance": Langhorne Manor Borough v. Clayton, 129 Pa. Superior Ct. 557, 558 (1938). "It is well settled that all proceedings which have not been determined by final judgment, are wiped out by a repeal of the act under which the prosecution for the offense took place": Scranton City v. Rose, 60 Pa. Superior Ct. 458, 462 (1915).

"As observed above, a repeal cannot divest contractual or property rights that have vested as a consequence of the repealed ordinance. Indeed, it is constitutionally precluded from so doing. It follows that the repeal of an ordinance is ineffective as to any act done or any right acquired or any claim arising under the repealed ordinance. The rule is the same as that applicable to the repeal of statutes. . . . However, repeal of an ordinance abates an action founded on it but involving no vested right based on it. The repeal of an ordinance for opening and improving a proposed street destroys all authority for proceeding with the improvement . . .": McQuillin, Municipal Corporations (3d ed.), §21.45, vol. 6, p. 276.

In the present case appellant acquired no right, nor did it do any act, by reason of the repealed ordinance. It may be argued that appellant would not have bought the land in question, were it not for the provisions contained in section 1311. Appellant must have known that

the zoning law could be amended and that section 1311 could be deleted therefrom. Every person who buys land in a zoned district is charged with the knowledge that the zoning law may be amended, and buys with that risk. Such buyer acquires no vested right to keep the zoning law static and unchangeable.

It is not for us to pass upon the wisdom of repealing what seems to us a just, fair and reasonable provision of the Upper Dublin Zoning Ordinance, nor will we comment upon a law that was apparently aimed at one individual. These are matters of ethics and legislative morality, about which we are not here concerned. What we do decide is that with the repeal of section 1311, the petition filed under and by virtue of the provisions of that section fell with it, and the board of adjustment had no jurisdiction to consider that section in arriving at a decision in this case.

On November 3, 1949, original petitioner, David F. Henrie, filed with the board of adjustment a supplemental petition under section 1007 of the Zoning Ordinance of Upper Dublin Township, asking for a variance to permit him to develop his land in accordance with the plan approved June 3, 1940 (see findings of fact 2 and 3). This petition was given the same number as the petition for a special exception under section 1311, and it forms part of the record returned to this court.

The board of adjustment seems to base its decision under section 1311 of the ordinance, and no mention is made of the application for a variance under section 1007. It is therefore impossible to tell if the application for a variance under section 1007 was considered by the board at all.

We would be inclined to return this record to the board of adjustment for clarification were it not for the opinion we have formed that under the law no variance such as is here sought could be granted. The enabling

act, as amended, section 3107 of the Act of May 27, 1949, P. L. 1955, 53 PS §19092-3107, provides that the board of adjustment in townships of the first class shall have power, inter alia: "(3) To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

The variance applied for would affect over 20 acres of land, on which it is proposed to build approximately 100 houses. We have examined many cases involving variances under the zoning law and we have not found one, nor has any been brought to our attention, in which the facts approached the situation here before us. In practically every case there was one lot, one building or one institution involved. If a variance can apply to over 20 acres of land and 100 houses, we see no reason why it could not apply to a whole zone, and surely the legislature never intended such a result.

We have been unable to find any case in which our appellate courts have said what the words "specific cases" mean in the enabling acts, and what limitations, if any, these words impose on the board of adjustment as to the extent of the territory over which they may exercise jurisdiction in granting variances. Our own thought is that if the relief sought could not be obtained by municipal legislation, because it would be "spot zoning", then the proper remedy is an application for a variance, but, where the relief sought would not be open to attack as spot zoning, then the remedy is within the jurisdiction of the legislative body, and not the board of adjustment.

What is "spot zoning" depends to a great extent upon the circumstances of each case, but we do not think

that a zoning ordinance which applied to 20 acres of land, divided into lots upon which could be built 100 houses, in a location ripe for suburban development, could successfully be attacked as "spot zoning".

Applying the above test to the facts of this case, we are of the opinion that the Board of Adjustment of Upper Dublin Township has no authority to grant the variance requested by appellant.

And now, October 20, 1950, the appeal is dismissed, and the decision of the Board of Adjustment of Upper Dublin Township is affirmed.